### DISSTON et al. v. McCLAIN, Internal Revenue Collector.

(Circuit Court of Appeals, Third Circuit. July 9, 1906.)

No. 33.

1. INTERNAL REVENUE—LEGACY TAXES—PASSING OF LEGACY.

Sections 29, 30, War Revenue Act June 13, 1898, c. 448, 30 Stat. 464, 465 [U. S. Comp. St. 1901, pp. 2307, 2308], did not impose a tax on legacies of personal estate on the ground that they were technically vested, but only upon such legacies when they came into actual possession and enjoyment, and the turning over of such a legacy to the beneficiary, and the payment of the tax were intended to be contemporaneous.

2. SAME—ANNUITY CHARGED ON INCOME OF ESTATE.

The personal estate of a testator is not subject to the payment of a legacy tax under sections 29, 30, War Revenue Act June 13, 1898, c. 448, 30 Stat. 464, 465 [U. S. Comp. St. 1901, pp. 2307, 2308], as a legacy of an entirety for life merely because a fixed income for life is to be paid to a beneficiary out of the whole income of the real and personal estate in the hands of trustees, and is primarily chargeable under the state law upon the personalty but in such case the specific payments only are taxable as the same from time to time become due and payable to the legatee.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below see 143 Fed. 191.

Michael J. Ryan, for plaintiffs in error.

Jasper Yeates Brinton and J. Whitaker Thompson, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. The plaintiffs in error were plaintiffs below, and, as executors of the testator named, brought their action to recover from the defendant, late Collector of Internal Revenue in Pennsylvania, the sum of $14,926.01, as for taxes alleged to have been unlawfully collected and paid by plaintiffs to defendant under protest.

The testator, Horace C. Disston, in his lifetime a resident of Philadelphia and citizen of the state of Pennsylvania, died on June 13, 1900, having first made his last will and testament, duly probated on June 19, 1900, whereby he appointed the plaintiffs in error his executors, who accepted and qualified as such. The defendant, Penrose McClain, was Collector of Internal Revenue for the United States, in and for the First Revenue District of Pennsylvania, at the time the alleged excessive and illegal payment of taxes was made to him by the said plaintiffs, to wit, on June 21, 1901. The statement of claim sets out certain portions of the will of the said Horace C. Disston, as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed of whatsoever kind and wheresoever situated, I give, devise and bequeath unto my brother, William Disston, my friend, George McGowan, and the Tacony Saving Fund Safe Deposit. Title and Trust Company, in trust nevertheless, for the following uses and purposes: To keep the same invested in such securities as I may have or to invest the same as they may determine, and from the income arising from all my said estate to pay first to my beloved friend, Rachael Asch, the sum of fifteen thousand dollars per year during all the term of her natural life—such payment to be made to her by them in quarterly instalments of three thousand seven hundred and fifty dollars each, and the first instalment to be paid to her three months after my decease and thereafter quarterly, as aforesaid. Second. To invest the balance of said income in such securities as they may decide upon until the death of the said Rachael Asch. Third. Immediately upon the death of the said Rachael Asch, I will and direct that the trust estate hereby created shall cease and determine and that the trustees aforesaid shall pay over the whole of my said estate absolutely and free and clear of any trust to such persons and to such charities and in such proportions and amounts as I may direct in a paper signed by me and addressed to them, and which paper I intend to forthwith prepare. Should any person or charity so designated by me be unable from any cause to take the amount or interest so fixed and named by me, then I will and direct that such portion or interest and all the rest, residue and remainder of my estate that may be undisposed of shall be divided according to the intestate laws of the state of Pennsylvania."

Under this provision of the will, the said Rachael Asch received from the said executors the sum of $3,750 every three months, commencing September 13, 1900, down to and including June 13, 1902, amounting in the aggregate to the sum of $30,000, on which, as having been vested in possession or enjoyment of the said Rachael Asch prior to July 1, 1902, the date at which the repeal of the war revenue act took effect, it was claimed by plaintiffs that a tax of $2,250, and no more, became due to the United States. The statement of claim avers that, nevertheless, on June 21, 1901, the said defendant caused to be levied and assessed on the interest of the said Rachael Asch, under the above-recited provision of the will, the sum of $16,871.26, which sum was paid on said date under protest by the plaintiffs to the said defendant; and that subsequently, to wit, on or about May 26, 1902, the plaintiffs did, in compliance with the rules and regulations thereto prescribed, apply to the Commissioner of Internal Revenue, for the repayment of the portion of said tax which was collected on said contingent beneficial interest of the said Rachael Asch, which had not become vested prior to July 1, 1902, and also for the repayment of all the tax assessed upon the said $30,000 in excess of $2,250, and that subsequently, to wit, on or about September 27, 1902, the said Commissioner of Internal Revenue refused to refund the same to the plaintiffs. In other items of the will, as set forth in the statement of claim, there were other bequests of personal property to the said Rachael Asch, which were appraised at the sum of $12,150. On these bequests, it is alleged the defendant caused to be levied the sum of $1,215, instead of $910.25, which was claimed to be all the tax due upon said legacy. The action was therefore brought to recover the difference between the amount of $18,086.26, assessed and levied by the defendant and paid under protest by plaintiffs, and the sum of $3,160.25, the amount of tax alleged to be actually due the United States.

To this statement of claim, there was a demurrer by the defendant, on the ground that the taxes paid by the plaintiffs, under protest, were lawfully assessed and collected by the defendant, under the provisions of sections 29 and 30 of the act of June 13, 1898, c. 448, 30 Stat. 464, 465 [U. S. Comp. St. 1901, pp. 2307, 2308] commonly called the war revenue act, and the several acts amending the same.

The relevant provisions of sections 29 and 30 of said revenue act are as follows:

"Sec. 29. That any person or persons having in charge or trust, as administrators, executors or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid, shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property either by will or by the intestate laws of any state or territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be and hereby are, made subject to a duty or tax, to be paid to the United States, as follows—that is to say:"

The section then proceeds to provide a scale of taxation dependent upon amount and relationship.

"Sec. 30. That the tax or duty aforesaid shall be due and payable in cie year after the death of the testator and shall be a lien and charge upon the property of every person who may die as aforesaid for twenty years, or until the same shall, within that period, be fully paid to and discharged by the United States; and every executor, administrator, or trustee having in charge or trust any legacy or distributive share, as aforesaid, shall give notice thereof, in writing, to the collector or deputy collector of the district where the deceased grantor or bargainor last resided within thirty days after he shall have taken charge of such trust, and every executor, administrator, or trustee, before payment and distribution to the legatees, or any parties entitled to beneficial interest therein, shall pay to the collector or deputy collector of the district of which the deceased person was a resident, or in which the property was located in case of nonresidents, the amount of the duty or tax assessed upon such legacy or distributive share. * * * Any tax paid under the provisions of sections 29 and 30 shall be deducted from the particular legacy or distributive share on account of which the same is charged."

The court below sustained the demurrer, and judgment was entered thereon in favor of the defendant. The grounds of the court's decision, as disclosed in the short opinion sent up in the record, seem to be that the provision of the will in favor of Rachael Asch, was in effect a legacy of a life estate in the present value of so much or all of the personal property as would be necessary to produce the income of $15,000 a year, as ascertained by the mortality tables authorized by certain regulations of the Treasury Department, and that said life estate vested as an entirety in possession or enjoyment, immediately upon the death of the testator. The learned trial judge rests this conclusion upon what he supposes to be the authority of the decision of the Supreme Court, in the case of Vanderbilt v. Eidman, 196 U. S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563.

In this case, as in all cases involving questions of taxation, it must be borne in mind, as a canon of construction of universal acceptance in American and English jurisprudence, that no tax burden is held to be laid on citizen or subject, unless the legislative intention

to so impose it is expressed in clear and unequivocal language, and that in cases of doubt, statutes imposing taxes are construed most strongly against the government and in favor of citizens or subjects, and that such statutes are not to be liberally construed. No exigency for extending the meaning of such statutes beyond what they expressly and clearly import, can ever arise, because it is always within the power of the Legislature to express its intent in language so clear and unequivocal as not to admit of doubt. With these well-established maxims of interpretation in view, let us examine the language by which Congress has seen fit to impose the taxes in question, and the reasoning of the Supreme Court in the case of Vanderbilt v. Eidman, relied upon by the learned judge of the court below.

In the first place, it is to be noticed that the tax is imposed in general terms upon legacies and distributive shares. These words possess a definite meaning, and no confusion or difficulty need arise as to the subjects with reference to which taxation is imposed. Legacies and distributive shares are classed together, and as a distributive share is a definite portion in money of the residue of the personal estate of an intestate, so a legacy is a definite gift by will of personal property, either general and pecuniary, or specific. As such, a legacy is of a specific article, or of specific articles, of personal property, or of an ascertained and definite pecuniary amount, and may be readily valued by the executor or trustee having it in charge. It is the corpus to which the legatee is entitled in possession or enjoyment. The legacy in question, under the will of the testator, is not a sum certain given once for all to the legatee, but a yearly sum of $15,000, to be paid to Rachael Asch in stated quarterly payments during the term of her natural life, out of the income of the whole estate, real and personal, of the testator, devised and bequeathed to trustees for the purposes of his will. The natural meaning of such a provision, and of the language used, would seem clearly to be a series of legacies or bequests vesting in possession or enjoyment at stated intervals, but each, contingent, before vesting, on the legatee's being alive when it became due, the tax on which is not to be paid, as we shall see presently from the authoritative opinion of the Supreme Court in the Eidman Case, until and as it takes effect in possession or enjoyment.

To sustain the action of the collector, we have to ignore the fact that there is no gift to Rachael Asch of a definite sum, as an entirety, other than the quarterly payments which the trustees of his residuary estate, real and personal, are directed to make out of the income thereof, year by year, during the term of her life. Nor is any sum given to the trustees or set apart by the will, the income of which, whatever it may be, is to be for the use of Rachael Asch. To create the corpus of a legacy, the income of which will supply these definite quarterly payments, would impose upon the trustees the necessity of setting apart such an amount of money as would, in their judgment, produce the income, thus creating a principal sum or corpus which the testator has not seen fit to create in the shape of a legacy, and to so create it by the mere exercise of a judgment which may prove mistaken in its results. The sum thus arbitrarily estimated, the collector assumes the right of appraising as the legacy of a life estate in personal

property, the present value of which, for the purposes of taxation, is to be ascertained by rules and methods not designated in the taxing law, nor, as we think, authorized or contemplated thereby.

Counsel for appellee lays much stress in his argument upon the alleged fact that the fixed payments out of income, real and personal, provided for in the will, consumed the entire income from the residuary personal estate. From this he argues that this provision of the will was in effect a bequest of the whole residuary personalty, as an entirety, because the law of Pennsylvania requires all legacies in the first instance to be paid from the personal estate. This argument might have had some plausibility in its application to the bequest in the Eidman Case of the whole income from the residuary estate, real and personal. This was a disposition of the entire usufruct of the residuary personal estate in favor of the beneficiary for a definite period, and the intention of the testator was clearly indicated to make a gift of the entire residuary personal estate for that purpose. It was a gift of the whole income, indefinite in amount, and might be more or less. In the case at bar, however, a definite sum is to be paid to Rachael Asch *out* of the whole income from the residuary real and personal estate in the hands of the trustees. There is nothing definite or capable of being made definite as to the source from which the income is derived. Presumably the income collected by the trustees was more than sufficient to make these definite payments. Neither the personal estate nor real estate is bequeathed and devised as an entirety for the raising of these sums. The character of the bequest is not to be determined by the adventitious relation of the amount of the personalty to that of the realty, or by the requirement of the Pennsylvania law as to the primary application of the personalty, or by the more or less amount of income derived from the personalty. It might have happened that the testator's personal estate had been so invested as to yield an income more than sufficient to make the payments in question. The mere fact that it was found so invested as that the income was not adequate for that purpose, cannot impose a different legal character upon this provision of the testator's will, or authorize the collector to consider the whole personal estate as a legacy and taxable as an entirety, and for that purpose to ascertain its value as a life interest. Such a construction of the revenue act of 1898 is, we think, unwarranted by its plain language and unsupported by any authoritative interpretation of it.

So much for what seems to us the plain meaning of section 29, imposing the tax here under consideration. The examination and discussion of this section of the act, together with other sections having relation to the subject of its inquiry, made by the Supreme Court in Vanderbilt v. Eidman (supra), confirms the view just stated. This case, as we have said, is relied upon by the learned judge of the court below, who says:

"This income for life is exactly similar to the income devised for a certain period in the case of Vanderbilt v. Eidman, in which case it was conceded that such a legacy is taxable as one presently in possession and enjoyment."

That the learned judge was mistaken, and that there is a difference between the two cases, in the provision as to income, has been shown,

we think, by what has just been said. It is true that the whole income, indefinite in amount, from the residuary estate was given by the testator for a certain period to his son, and that the corpus of the fund, from which the income was to be derived, was valued by the collector for the purposes of taxation, as being a vested legacy of a life estate, but we do not think it is correct to say that the court conceded the validity of this procedure. Nor do we think the case in this respect is analogous to the case at bar. It becomes necessary, however, from the fact that it was so relied upon by the court below, to examine with some care the judgment of the Supreme Court in this case. We had occasion, in deciding at this term the case of Herold, Collector, v. Shanley, 146 Fed. 20, to consider this decision, and the reasoning upon which it is founded. The case is recent, and it so deals with this war revenue act as to throw light upon the questions with which we are here concerned.

The seventeenth clause of Cornelius Vanderbilt's will devised the residue of his estate to his executors, in trust, to collect the income and apply so much of the same as might be, in their judgment, advisable to the support and maintenance and education of his son Alfred G., to accumulate any surplus income, to be paid to him when he arrived at the age of 21 years, and thereafter to pay the net income of his estate to him, as received, until he arrived at the age of 30 years, when he was to be put in full possession of one-half of said estate, to be set apart for that purpose by the executors and trustees; and upon the further trust, thereafter to pay to the said Alfred G. the income from the balance of said estate, until he should arrive at the age of 35 years, when he was to be put in possession of the balance of said estate, and the trustees discharged. If he should die without children, or none of his children should attain majority, then the testator's son, Reginald C., was to take, etc. "The right of Alfred G. Vanderbilt to the beneficial enjoyment, as provided in the will, until he became 30 years of age, was appraised at $5,119,612.43, and upon this sum the executors paid a death duty, under sections 29 and 30 of the Act of June 13th, 1898. * * * After payment of this amount, and subsequently to the passage on March 2nd, 1901, c. 806, § 10, 31 Stat. 946 [U. S. Comp. St. 1901, p. 2308] of an amendment to the war revenue act of 1898, the Commissioner of Internal Revenue, considering that by that amendment Alfred G. Vanderbilt had become immediately liable for a tax on his right to succeed to the whole residue if he lived to the ages of 30 and 35 years respectively, assessed a death duty based upon that hypothesis." The commissioner assessed this interest as a vested estate, equal in value to the sum of the entire residuary estate, to wit, $18,972,117.46, and upon this valuation a tax was levied of 2¼ per cent., producing $426,872.64. But on this amount, credit was allowed for the sum of tax previously paid on the appraisement of his right to the beneficial enjoyment of the residuary estate, until he became 30 years of age, to wit, $115,191.28. The balance of $311,681.36, was paid by the executors under protest, but no question was made as to the former payment of the tax of $115,191.28, on the appraised value of the right to the whole income until he

became 30 years of age. Suit was accordingly brought in the Circuit Court of the United States for the recovery only of the balance of the tax paid, after deducting this latter sum, as having been prematurely levied on the legacy of the whole residuary estate to Alfred G. Vanderbilt, when he should arrive at a certain age, as above stated. The question of the propriety of the tax levied on the appraisement of Alfred G. Vanderbilt's right to the beneficial enjoyment of the income of the residuary estate until he was 30 years of age, therefore, was not and could not have been in question either before the Circuit Court, the Circuit Court of Appeals, or the Supreme Court. The case came before the Circuit Court of Appeals from the Circuit Court, which had sustained a general demurrer to the complaint. The latter court, after stating the facts as above recited, certified four questions to the Supreme Court, the third one of which is as follows:

"Did sections 29 and 30 of said act authorize the assessment and collection of a tax with respect to any of the rights or interests of Alfred G. Vanderbilt as a residuary legatee of the personal estate of Cornelius Vanderbilt under the seventeenth clause of the will, with the exception of his present right to receive the income of such estate until he attains the age of thirty years, prior to the time when, if ever, such rights or interests shall become absolutely vested in possession or enjoyment?"

The other questions certified do not vary or enlarge the scope of the third question, as above recited. It will thus be seen that, in the questions submitted to the Supreme Court, there is excluded, by express language, any consideration of the right to appraise and levy a tax upon the value of the right to receive the income of the entire personal estate of the testator, for the period named. Mr. Justice White, in delivering the opinion of the court, said that the fundamental consideration involved in the questions was whether the burden imposed by the war revenue act "bore upon the right to the residue which Alfred G. Vanderbilt might possess or enjoy in the future if he lived to the age specified in the will, upon the theory that the right so to possess or enjoy in the future was technically vested." It is true that the learned justice has so framed this question as to speak of the result of its being negatived as a restriction of the burden to that which had already been assumed by the executors, by their voluntary payment of the tax on the said beneficial interest of Alfred G. Vanderbilt, in the income of the personal estate, until he arrived at 30 years of age. But we repeat that the question as to the propriety of this voluntarily paid tax was not, and could not have been, before the court, nor do we think that, in stating the question to be whether the tax was to be confined to that which had been voluntarily paid and could not be a subject of suit, or was to include that also which was paid under protest, and for which alone suit was brought, the learned justice can be taken to have conceded the legality of the former. On the contrary, the reasoning by which the illegality of the protested tax is demonstrated, tends largely to show the illegality of the tax voluntarily paid. But however that may be, it must be observed again, that the express bequest of all the income, be it more or less, from the entire residuary personal estate, during a definite period, differs widely, as regards the question here presented, from the bequest of a.

definite sum to be paid yearly out of the income of both real and personal estate, collected by the trustees.

After a full statement of the questions involved, the opinion says:

"It will be observed that the duties imposed in section 29 have relation to two classes, first legacies or distributive shares passing by death and arising from personal property; and, second, any personal property or interest therein transferred by deed, grant, bargain, sale or gift, to take effect in possession or enjoyment after the death of the grantor or bargainor, in favor of any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise. As to this second clause, the statute specifically makes the liability, for taxation depend, not upon the mere vesting in a technical sense of title to the gift, but the actual possession or enjoyment thereof. By any fair construction, the limitation as to possession or enjoyment expressed as to one class must be applied to the other."

The statute, Mr. Justice White says, has not subjected the two classes to different rules in imposing the tax. In this connection, he calls attention to the fact that, following the designation of the two classes, "there are five distinct paragraphs, subjecting the passing of the property taxed in both classes to a different rate of tax, dependent upon the degree of relationship of the beneficiary to the decedent, and in each, it is specifically provided that a tax is to be levied in respect only of a beneficial interest having a clear value," * * * and "that nowhere in the section is there contained language referring to technical estates in personalty, or treating them as subjects of taxation, despite the absence of the right to immediate possession or enjoyment." Attention is then called to section 30, relating to the collection of the tax imposed by section 29, by which, he says:

"The meaning of section 29, as just indicated, is made clearer. Thus, by section 30, it is provided that 'every executor, administrator or trustee, before payment and distribution [of a legacy or distributive share] to the legatees, or any parties entitled to beneficial interest therein, shall pay to the collector of the district of which the deceased person was a resident, the amount of the duty or tax assessed upon such legacy or distributive share.' It also requires that the schedule, etc., to be furnished by an executor, administrator or trustee, to a collector, shall contain the name of each person having a beneficial interest in the property in the charge or custody of the executor, etc., with a statement 'of the clear value of such interest.'"

He then says:

"These provisions harmonize with the meaning which we have ascribed to section 29, since they clearly import that the tax is to be deducted from the beneficial interest which the beneficiary was entitled to enjoy, and from which, before payment or distribution, a deduction of the duty was to be made."

The court then proceeds to hold that the act of 1901 did not change the law of 1898, as to the subject of the tax, so as to cause it to embrace subjects of taxation which were not included prior to the amendment, proceeding as follows:

"The amendatory act, so far as necessary to be considered for the purposes of this question, re-enacted sections 29 and 30 of the original act. * * * The amendments, therefore, did not, in our opinion, justify the construction that Congress intended by adopting them to cause death duties to become due within one year as to legacies and distributive shares, which were not capable of being immediately possessed or enjoyed, and were therefore not subject to

taxation under the original act. * * * On the contrary, the amendatory act reiterated, without alteration, the provisions found in the original act as to possession or enjoyment and beneficial interest and clear value. Indeed the amendatory act contained new provisions not expressly found in the original act, * * * such as the proviso at the close of section 30, as follows: 'Any tax paid under the provisions of sections 29 and 30 shall be deducted from the particular legacy or distributive share on account of which the sum is charged,' a provision plainly importing a practically contemporaneous right to receive the legacy or distributive share, and one which would be impracticable of execution if the tax was to be assessed or collected before the beneficiary and the rate of tax could certainly be ascertained."

It will thus be seen that the argument of the court was intended to support the contention that the war revenue act imposed no duty upon legacies of personal estate on the ground that they were technically vested, but only upon such legacies when they came into actual possession and enjoyment, and that the turning over of such a legacy to the beneficiary, and the payment of the tax were intended to be contemporaneous. While we incline to think the reasoning of the court, in maintaining this proposition, tends to exclude from taxation, under the war revenue law, the interest of Alfred G. Vanderbilt in the residuary personal estate, the income of which he was to enjoy until he reached the age of 30 years, no question as to it was before the court. We are clear, however, that it cannot be taken to justify the imposition of a tax upon the personal estate of the testator in this case as a legacy of an entirety, merely upon the ground that a fixed income for life is to be paid out of the whole income of the real and personal estate in the hands of the trustees. In other words, even if a bequest of the whole indefinite income from the residuary estate be considered a legacy of the corpus of that estate, as an entirety, it does not follow that the bequest of a fixed yearly payment of a definite sum out of the whole income of the real and personal estate in the hands of the trustees furnishes legal ground for a like inference.

By confining ourselves to what the statute plainly says, and avoiding unauthorized and artificial constructions, we can find only as a subject of taxation thereunder, a series of payments to be made quarterly, each, contingent, as to possession and enjoyment, upon the happening of an event named in the will, to wit, that the legatee should be alive when the payments are to be made. The statute nowhere refers in express terms to the interest or income of a legacy, nor does it impose any tax in respect thereto, before it is actually received. If the act had intended that the interest in a fixed and definite income for life, payable out of personalty alone, much more in such an income payable *out* of the total income of the whole residuary real and personal estate, should be taxed, this intention would not be left to inference, but would be clearly expressed and a mode of estimating such an interest would be prescribed, as, for example, has been done in the collateral inheritance tax laws of the states of New York and New Jersey. In this statute, there is no mode provided for valuing such an income given to a person for life. The mode adopted by the collector in this case is entirely unauthorized by the statute, for he did not estimate by life tables the value of a life estate in a designated and ascertained fund,

but by an exercise of his arbitrary judgment, proceeded to ascertain or create the fund that would produce the income, though it had not been ascertained or designated by the testator, and then proceeded to value it by the use of the life tables. The provision in section 30 of the act of 1898, relied upon by the collector as an authorization of the procedure adopted by him, is not, in our opinion, clear and precise enough to sanction it. It provides that the executor, trustee, etc., shall make a schedule of the amount of such legacy or distributive share, together with the amount of the duty which has accrued thereon, "in such form or manner as may be prescribed by the Commissioner of Internal Revenue." In the case of Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969, the schedule made out by the executors is set out in the report, and shows a legacy of the income of the whole residuary estate for life, amounting to the sum set out in the schedule. The "present value" of the life interest of the beneficiary was estimated, according to the United States tables, at a lesser sum therein stated. This is a very different case from the present, where the whole residuary personal estate is not thus disposed of. Inasmuch as the residuary estate was an ascertained sum, and its "present value" as a life estate was capable of determination by the method pursued, no question was made by the executors in this respect, and the long and interesting opinion of the court dealt with other and important elementary questions touching the history and nature of death duties.

Executive officers may be authorized to prepare blanks and forms, or prescribe in certain respects the manner of executing the legislative will, but they may not receive a delegation of the legislative power, even if such delegation were intended to be made. We think, therefore, there was no tax imposed by the act of 1898 on the interest of Rachael Asch, other than the specific payments of the annuity bequeathed to her as the same should from time to time fall due.

The judgment of the court below is therefore reversed.