LYNCH, Collector, v. UNION TRUST CO. OF SAN FRANCISCO et al.

(Circuit Court of Appeals, Ninth Circuit.    October 5, 1908.)

No. 1,507.

**1. STATUTES—RULES OF CONSTRUCTION—STATUTES IMPOSING SPECIAL TAXES.**

In the construction of statutes imposing taxes, and especially burdens of special or unusual nature, in cases of doubt or ambiguity, every intendment is to be taken against the taxing power.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 326.]

**2. INTERNAL REVENUE—LEGACY TAXES—CONTINGENT INTERESTS—"LEGACY"—"DISTRIBUTIVE SHARE."**

The right given to a beneficiary by a will to receive a stated share of the net income from the entire residuary estate of the testator, left in trust until the time fixed for its distribution, is not a "legacy" or "distributive share," within the meaning of such terms as used in War Revenue Act June 13, 1898, c. 448, § 29, 30 Stat. 464 (U. S. Comp. St. 1901, p. 2307) ; and, under Act June 27, 1902. c. 1160, § 3, 32 Stat. 406 (U. S. Comp. St. Supp. 1907, p. 652), which provides that no tax shall be assessed under said section 29 in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to July 1, 1902, the only interest of the legatee in such income which was subject to taxation was the amount thereof actually received by him prior to said July 1, 1902, provided such amount was $10,000 or more.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, pp. 2135–2136 ; vol. 5, pp. 4054–4057 ; vol. 8, p. 7703.]

**3. SAME—"ACTUAL VALUE"—"CLEAR VALUE."**

The terms "actual value," as used in section 29, and "clear value," in section 30, War Revenue Act June 13, 1898, c.,448, 30 Stat. 464, 465 (U. S. Comp. St. 1901, pp. 2307, 2308), considered, and *held* to convey the idea of definite or certain value, something in no sense speculative.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 1, p. 171 ; vol. 2, p. 1222.]

In Error to the Circuit Court of the United States for the Northern District of California.

For opinion below, see 148 Fed. 49.

This is an action to recover from the government the amount of certain taxes imposed and collected by it under the supposed sanction of Act June 13, 1898, c. 448, 30 Stat. 464 (U. S. Comp. St. 1901, p. 2286), entitled "An act to provide ways and means to meet war expenditures and for other purposes," commonly referred to as the "War Revenue Act." The material facts upon which the action arises are these:

Richard H. Follis, a resident of the city and county of San Francisco, died May 31, 1900, leaving a last will whereby, after certain provisions with which we are not concerned, he left the entire residue of his estate to trustees, in trust to receive the rents, issues, and profits thereof, and, after necessary expenditures for care, maintenance, insurance, taxes, alterations, reconstruction, etc.: "(6) To pay the net proceeds of the income, rents, issues and profits of said trust quarterly, upon the first day of each and every quarter of the year equally, share and share alike, to all of my children, Margaret, James, Richard, Mary and George up to and until such time as each of them shall respectively attain to the ages following, that is to say: Until said Margaret E. Follis, now wife of Dr. De Vecchi, shall attain the age of thirty-nine years, until said James H. Follis shall attain the age of thirty-three years, until said Richard H. Follis, Jr., shall attain the age of thirty-one years, until said Mary Lilly Follis shall attain the age of twenty-nine years, and until said George Clarence Follis shall attain the age of twenty-seven years." The will then provides for the turning over to each legatee as he reaches the age designated

of the one-fifth of the corpus of the estate. The will was duly admitted to probate, and thereafter in due course the residue of the estate was distributed to the trustees named therein, under and in strict accord with the trust clause above set forth. In proper time, and prior to such distribution, the executors, as provided by said act, made to the collector of internal revenue for the district a schedule and return, showing the facts required for the purposes of assessment, from which it appeared that the value of the personal estate remaining for distribution to the trustees, after payment of all expenses, and from which the devisees in the will would each be entitled to receive one-fifth of the net income for the period prescribed in said will, was $778,491.28. It further showed that the period during which said beneficiaries would respectively be entitled to receive such income before payment over of his or her share of the corpus was as to three of them a fraction over four years, and as to the other two a fraction over five years, and that the present worth or value of the respective rights of the legatees to receive such income during such period, as estimated by the collector in accordance with mortuary or annuity tables upon a four per cent. basis, was: Margaret E. De Vecchi, $23,068.83; James H. Follis, $23,778.52; Richard H. Follis, $30,759.41; Lillian Mary Griffin, $28,574.43; Clarence George Follis, $29,424.53.

The rights of the devisees, as shown by such schedule, were separately assessed; the tax upon such several rights aggregating a total of $1,349.88. This amount was subsequently paid to the collector under protest; and a proper demand that it be refunded having been thereafter denied, this action ensued to recover that sum with interest. It was stipulated by the parties, for the purpose of judgment, that the right of the legatees to receive such income was capable of a present clear valuation, and that the valuations in said schedule and return were correct clear valuations of said rights, and "that the present clear value of the rights to the beneficial enjoyment of the bequest passing to each of said legatees by reason of the said will creating said legacies, derived from said personal property, thus computed, was in each case over $10,000." It was further stipulated "that the total amount received by each of said beneficiaries to said trust hereinbefore mentioned, as income from said trust property, on the legacies which they will ultimately receive, if they live to the date referred to in the decree of distribution, aggregated in amount prior to July 1, 1902 [the date when the repeal of the act took effect], the total sum of $8,750 in each case, and no more, and that no other sums were due and payable from the trustees to the legatees prior to July 1, 1902."

The Circuit Court held that the tax was illegally collected, upon the ground that the rights passing to the devisees, upon which the tax was levied, were not subject to the tax, and awarded judgment in favor of the plaintiffs below, the defendants in error here, for the recovery of the amount sued for; and this judgment is now here for review.

Robert T. Devlin, U. S. Atty., and George Clark, Asst. U. S. Atty.
Heller & Powers (E. S. Heller, Frank H. Powers, and Sidney M. Ehrman, of counsel), for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

VAN FLEET, District Judge (after stating the facts as above). No question is made as to the propriety of the amount of tax paid if the interest was subject thereto; the sole question presented for consideration being whether the right or interest passing to the legatees, and upon which the tax was assessed, was of a character to subject it to the burden imposed by the act. That question, to employ the language of counsel for the government, is:

"Whether a tax may be imposed, under the provisions of the war revenue act, upon the right to receive the income from personal property left in trust for a certain period, which period terminated after the repeal of the war revenue act."

Upon this question he states his position thus:

"It is to be noted that the tax was not imposed upon moneys or personal property to be actually received by or passing into the hands of the legatees. The tax was imposed upon the right of each legatee to enjoy the income from the corpus of the trust estate, which was delivered to the trustees for the benefit of the various legatees. The property is to be managed by the trustees for the sole use and benefit of the legatees. The legatees receive the whole of the income therefrom. They are the true owners for a stated term."

And further:

"The position of the government in the case is that each of the legatees virtually received an equitable estate for a term in a portion of the trust estate."

And that:

"The action of the collector amounted to the levying of the tax upon an equitable estate for a term of years; the legal title to the term being in the trustees, but the enjoyment of the property being vested entirely in the beneficiaries."

This fairly presents the attitude of the government in the controversy, and is, perhaps, as strong a statement of the case as the facts would warrant. Was such an interest a proper subject of taxation under the act?

This inquiry is to be answered from a consideration of the provisions of the act in the light afforded by certain adjudicated cases wherein these provisions have been under review. Primarily in this connection it is necessary to keep in view a cardinal principle, to be applied generally to the interpretation of legislation whereby the government seeks to impose a duty or burden upon the property or rights of the citizen in the nature of taxation, and more especially applicable to statutes such as this, seeking to impose a burden of a special or unusual character, and that is that, in all cases of doubt or ambiguity arising on the terms of such a statute, every intendment is to be indulged against the taxing power. This principle has been aptly stated in two cases involving the application of the statute under consideration: Eidman v. Martinez, 184 U. S. 578, 583, 22 Sup. Ct. 515, 46 L. Ed. 697; Disston v. McClain, 147 Fed. 114, 116, 77 C. C. A. 340.

The feature of the act more immediately involved is found in section 29, which, so far as material to be stated, is as follows:

"That any person or persons having in charge or trust, as administrators, executors or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any state or territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be and hereby are, made subject to a duty or tax, to be paid to the United States, as follows," etc. Act June 13, 1898, c. 448, 30 Stat. 464 (U. S. Comp. St. 1901, p. 2307).

This section was repealed, to take effect July 1, 1902 (Act April 12, 1902, c. 500, § 7, 32 Stat. p. 97 [U. S. Comp. St. Supp. 1907, p. 649]),

but all taxes or duties imposed thereby and the amendment thereto, prior to the taking effect of the repeal, were reserved from the operation thereof. Subsequently, on June 27, 1902 (Act June 27, 1902, c. 1160, § 3, 32 Stat. 406 [U. S. Comp. St. Supp. 1907, p. 652]), Congress passed an act, commonly known as the "Refunding Act," which authorized and directed the refunding by the Secretary of the Treasury, upon proper application, of all such taxes "as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two," and provided that no tax should thereafter be assessed or imposed, under said war revenue act, "upon or in respect to any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to said July first, nineteen hundred and two." This was the state of the legislation at the time the present action arose.

But three cases have been cited as bearing in any wise directly upon the particular question involved. The first or leading case is that of Vanderbilt v. Eidman, 196 U. S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563, where the act and its amendments, as affected by the provisions of the refunding act, were under consideration by the Supreme Court, and its general scope and purpose and the rules of interpretation to be applied in ascertaining its limitations were very thoroughly gone into. In that case the testator gave the residue of his estate to his executors, to hold in trust for the support, maintenance, and education of his son, to accumulate the surplus and pay such accumulation to the son at the age of 21, and thereafter to pay him the net income of the whole estate until he should arrive at the age of 30 years, when he was to be put in possession of one-half the corpus, and the net income from the remainder to be paid him thereafter until reaching the age of 35 years, when he was to receive the remaining half of the estate; and the question arose as to the power to tax under the act the rights or interests of the son under the residuary clause of the devise. It was there held that, for the purposes of the duty or tax imposed by the act on legacies or distributive shares passing by death, such rights were intended to be placed in the same category as to the limitation of possession and enjoyment as the second class of interests referred to in the act—that is, property or interests therein transferred by deed, gift, etc., to take effect after death—and that the intent of the statute was, as to both classes, to tax only interests which were actually vested in possession or enjoyment of the beneficiary, and not an interest the title to which had merely vested in a technical sense, with the possession or enjoyment remaining contingent. In that connection, after a careful review of the provisions of section 29 of the act, it is said:

"In view of the express provisions of the statute as to possession or enjoyment and beneficial interest and clear value, and of the absence of any express language exhibiting an intention to tax a mere technically vested interest in a case where the right to possession or enjoyment was subordinated to an uncertain contingency, it would, we think, be doing violence to the statute to construe it as taxing such an interest before the period when possession or enjoyment had attached; and such is the construction which has been affixed to some state statutes, the text of which lent themselves more strongly to the construction that it was the intention to subject to immediate taxation mere-

ly technical interests without regard to a present right to possess or enjoy." Matter of Curtis, 142 N. Y. 219, 222, 36 N. E. 887; Matter of Roosevelt, 143 N. Y. 120, 38 N. E. 281, 25 L. R. A. 695.

It is further said, in discussing the effect of the refunding act:

"In view of the provision for refunding, we see no escape from the conclusion that this statute was in a sense declaratory of what we hold was the true construction of the act of 1898, and which, as we have seen, had prevailed prior to the amendment of March 2, 1901, and which was only departed from by the administrative officers under a misconception of the import of that amendatory act. * * * It is, we think, incontrovertible that the taxes which the third section of the act of 1902 directs to be refunded and those which it forbids the collection of in the future are one and the same in their nature, Any other view would destroy the unity of the section and cause its provisions to produce inexplicable conflict. From this it results that the taxes which are directed in the first sentence to be refunded, because they had been wrongfully collected on contingent beneficial interests which had not become vested prior to July 1, 1902, were taxes levied on such beneficial interests as had not become vested in possession or enjoyment prior to the date named, within the intendment of the subsequent sentence. In other words, the statute provided for the refunding of taxes collected under circumstances stated, and at the same time forbade like collections in the future."

This case was followed by that of Herold v. Shanley, 146 Fed. 20, 76 C. C. A. 478, decided by the Circuit Court of Appeals of the Third Circuit. In that case the question presented was essentially the same as in Vanderbilt v. Eidman, and the decision, being rested upon the authority of that case, does not call for further comment.

It will be observed that in neither of these two cases was the precise question presented in the case at bar involved; the only question being, as above suggested, the right to tax the residuary interest passing to the legatees. The cases are valuable, however, as furnishing an authoritative declaration of the scope and purpose of the act and the rules to be observed in its application.

The case of Disston v. McClain, above referred to, is more nearly analogous to the present, if, indeed, it may not be said to be exactly on all fours. In that case the will of the testator gave the residue of his estate to trustees, to keep the same invested, and—

"from the income arising from all my said estate to pay first to my beloved friend, Rachael Asch, the sum of fifteen thousand dollars per year during all the term of her natural life—such payment to be made to her by them in quarterly installments of three thousand seven hundred and fifty dollars each, and the first installment to be paid to her three months after my decease and thereafter quarterly, as aforesaid."

It was sought, as in this case, to tax this legacy or income as a life estate, and for that purpose its value was attempted to be ascertained by the employment of life or annuity tables. The opinion is written by Judge Gray, and is very full and exhaustive. After adverting to the rule of strict construction above referred to, it is said, with reference to the terms of the act as bearing upon the interest of the legatee:

"In the first place, it is to be noticed that the tax is imposed in general terms upon legacies and distributive shares. These words possess a definite meaning, and no confusion or difficulty need arise as to the subjects with reference to which taxation is imposed. Legacies and distributive shares are classed together, and as a distributive share is a definite portion in money of the residue of the personal estate of an intestate, so a legacy is a definite gift by will of

personal property, either general and pecuniary, or specific. As such, a legacy is of a specific article, or of specific articles, of personal property, or of an ascertained and definite pecuniary amount, and may be readily valued by the executor or trustee having it in charge. It is the corpus to which the legatee is entitled in possession or enjoyment. The legacy in question, under the will of the testator, is not a sum certain, given once for all to the legatee, but a yearly sum of $15,000, to be paid to Rachael Asch in stated quarterly payments during the term of her natural life out of the income of the whole estate, real and personal, of the testator, devised and bequeathed to trustees for the purposes of his will. The natural meaning of such a provision, and of the language used, would seem clearly to be a series of legacies or bequests vesting in possession or enjoyment at stated intervals, but each contingent, before vesting, on the legatee's being alive when it became due, the tax on which is not to be paid, as we shall see presently from the authoritative opinion of the Supreme Court in the Eidman Case, until and as it takes effect in possession or enjoyment."

And, after an elaborate discussion of the case of Vanderbilt v. Eidman and the principles of construction there announced, it is said:

"By confining ourselves to what the statute plainly says, and avoiding unauthorized and artificial constructions, we can find only as a subject of taxation thereunder a series of payments to be made quarterly, each contingent, as to possession and enjoyment, upon the happening of an event named in the will, to wit, that the legatee should be alive when the payments are to be made. The statute nowhere refers in express terms to the interest or income of a legacy, nor does it impose any tax in respect thereto, before it is actually received. If the act had intended that the interest in a fixed and definite income for life, payable out of the total income of the whole residuary real and personal estate, should be taxed, this intention would not be left to inference, but would be clearly expressed, and a mode of estimating such an interest would be prescribed, as, for example, has been done in the collateral inheritance tax laws of the states of New York and New Jersey. In this statute there is no mode provided for valuing such an income given to a person for life. The mode adopted by the collector in this case is entirely unauthorized by the statute, for he did not estimate by life tables the value of a life estate in a designated and ascertained fund, but by an exercise of his arbitrary judgment proceeded to ascertain or create the fund that would produce the income, though it had not been ascertained or designated by the testator, and then proceeded to value it by the use of the life tables."

Applying the principles announced in these cases to the facts here presented, it would seem to be obvious that the interest sought to be taxed under the will of Follis did not fall within the terms of the statute. Confessedly the only present right passing to these beneficiaries was that of receiving the income from the corpus of the estate in the hands of the trustees. Such an interest does not, for the reasons aptly stated by Judge Gray in Disston v. McClain, fall within the definition of either a legacy or a distributive share, in the sense in which those terms are employed in the act. It matters not that this right to the income may, as contended by counsel for the government, constitute an equitable interest in the trust fund, the present beneficial enjoyment of which is in the beneficiaries. It may, indeed, be conceded that this is a correct characterization of the estate conferred. But the question is: Does the act undertake to impose any burden upon such an interest? Very clearly it does not in express terms; and under the doctrine of strict construction, heretofore referred to, the application of those terms is not to be extended by implication beyond their plain, usual, and ordinary sense. As suggested by Judge Gray,

the act says nothing about taxing the mere right to an income before that income is actually received; and, had such been the intention, it would have been a very easy matter to express the purpose. Instead, Congress has contented itself, in designating the estates that shall be burdened with the tax, by employing terms having general and well-understood significations, and by those terms must its purpose be limited.

Moreover, as held in Vanderbilt v. Eidman, the purpose of the act was to subject to taxation only beneficial interests, which by reason of being absolutely vested in possession or enjoyment have a value capable of being definitely ascertained—"actual value" as expressed in section 29, or "clear value" as expressed in section 30. The estate or interest here sought to be taxed was very clearly not of that character. While the right to receive the income was vested, it was a right the enjoyment of which, as with the legatee in Disston v. McClain, was contingent upon the beneficiaries living to receive it; and, furthermore, as in that case, this income was to be derived from the entire residue of the estate of the testator, real and personal alike. It was necessary for the collector, therefore, under the limitations of the act, which taxes personal property alone, in order to reach his basis of value for the assessment, to first segregate the real from the personal property, and then resort, not only to the use of life or mortality tables, but to employ an arbitrarily assumed rate of interest in making the computation. We are entirely satisfied that, whether the employment of mortality or life tables under any circumstances is contemplated by the act, the mode resorted to in this case was not such as to produce the "actual" or "clear" value therein specified. In using those terms Congress must be deemed to have meant something more definite and certain than would be attached to the bald term "value," without the qualifying adjectives. A thing may have value in a general sense, although that value may not be susceptible of ready or definite ascertainment. It may depend upon some uncertainty or contingency. So that, when Congress employed the expressions "actual value" and "clear value," it very evidently intended to convey the idea of definite or certain value—something in no sense speculative. Here it is at once apparent that the result reached as a basis for the tax through the method adopted was at most an approximation or merely speculative; and it could be nothing else. Life or annuity tables are never employed to ascertain definite or actual results, but only as guides to a reasonable approximation. Vicksburg, etc., R. R. Co. v. Putnam, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257, and cases there cited.

We have not overlooked in this connection the stipulation in the record on the subject of value; but we do not read that stipulation as meaning anything more than that the result reached was the admitted value of the interests as that value was shown by the method of computation adopted—not that the employment of such a method was authorized by the act. If it was intended by the stipulation to convey the latter idea, it must be disregarded, since the parties can-

not be permitted to bind the court as to the proper construction of the statute.

Without pursuing the analogies further, we are satisfied that in no essential particular are the rights of the legatees involved in this case to be distinguished in their legal aspects from those involved in Disston v. McClain, and that, in accord with the conclusion reached in that case, it must be held that the only interest these legatees received under the will of the testator which could properly have been subjected to taxation under the act in question was the amount of income actually received and enjoyed prior to the date when the repeal of the act took effect; and, as that sum as to no one of them reached the amount of $10,000, there was nothing to which the tax could attach.

The contention of the government that the right to tax such an interest was implicitly upheld by the Supreme Court in Vanderbilt v. Eidman is very fully met and refuted in Disston v. McClain, and need not be further noticed.

These considerations are conclusive of the propriety of the judgment of the Circuit Court, and it is accordingly affirmed.