**COMMERCIAL HEALTH & ACCIDENT CO. v. PICKERING, Internal Revenue Collector.**

(District Court, S. D. Illinois, S. D. January 3, 1922.)

No. 16647.

1. **Internal revenue ⚖➝4—War revenue acts should be construed to give effect to intention of Congress.**

Notwithstanding the fact that the Revenue Acts of October 3, 1917, and February 24, 1919, were passed for the purpose of raising revenue to meet the expenses of the war, it is the duty of the courts, in construing them, to observe the fundamental rule to ascertain and give effect to the intention of Congress.

2. **Internal revenue ⚖➝4—Exemption proviso should be construed against exemption.**

The general rule that revenue laws should be construed strictly in favor of citizens applies to the enacting clause of the statute, but does not apply to a proviso creating exceptions from the general language, and a claim of exemption must be clearly made out.

3. **Internal revenue ⚖➝7—Section exempting local mutual organizations from income tax strictly construed.**

Revenue Act 1918, § 231, par. 10 (Comp. St. Ann. Supp. 1919, § 6336⅛o), which was a re-enactment of Act Sept. 8, 1916, tit. 1, § 11, par. 10 (Comp. St. § 6336k), and which exempts from the income tax farmers' or other mutual hail, cyclone, or fire insurance companies, or like organizations of

a purely local character, is to be construed strictly against the exemption, the same as it would be if it were a proviso to the general section imposing the income tax, instead of a separate section.

**4. Internal revenue** ⊜⇒7—Only local mutual insurance organizations are exempt from income tax.

In Revenue Act 1918, § 231, par. 10 (Comp. St. Ann. Supp. 1919, § C336⅛o), exempting from the income tax farmers' or other mutual insurance companies, or mutual companies for other purposes, or like organizations of a purely local character, the clause "of a purely local character" is one of limitation on all of the especially enumerated businesses set out in the entire paragraph, and not merely on the "like organizations," so that a mutual insurance company, whose business is not of a purely local character, is not within the exemption.

**5. Internal revenue** ⊜⇒7—Mutual insurance company, doing busines throughout the state, is not local.

A mutual insurance company, which prosecutes its business throughout an entire state, having a general office, with subordinate head quarters in three other cities, is not a company of a purely local character, exempt from the income tax.

At Law. Action by the Commercial Health & Accident Company against J. L. Pickering, Collector of Internal Revenue, to recover taxes paid under protest. Judgment directed for defendant.

P. B. Warren, of Springfield, Ill., for plaintiff.

Edward C. Knotts, U. S. Atty., of Springfield, Ill., and Carl R. Mapes, Solicitor of Internal Revenue, of Washington, D. C., for defendant.

FITZHENRY, District Judge. Plaintiff seeks to recover from the defendant, collector of internal revenue for the Eighth district of Illinois, $1,165.13, paid under protest as taxes levied and collected under the Revenue Acts of 1917 and 1919. The action is based upon the theory that plaintiff comes within the exempted class specified in paragraph 10, § 11, tit. 1, of the Act of September 8, 1916 (39 Stat. 756, 766, 767 [Comp. St. § 6336k]). This same provision was re-enacted by reference in Act Oct. 3, 1917 (40 Stat. 300, 315, 316) § 504, tit. 5 (Comp. St. 1918, § 6309¼a), and was re-enacted by section 231 of the Revenue Act of 1918 (Act Feb. 24, 1919 [40 Stat. 1057, 1076 (Comp. St. Ann. Supp. 1919, § 6336⅛o)]), and was referred to in paragraph D, § 503, tit. 5, of the same act (40 Stat. 1104 [Comp. St. Ann. Supp. 1919, § 6309⅓d]).

Paragraph 10 of section 231, supra, is almost identically the same as paragraph 10, tit. 1, of the Act of September 8, 1916. The latter provision was effective until the passage of the Revenue Act of 1918, and the former provision was in effect for the residue of the time covered by the tax sought to be recovered from the date of the passage of the Revenue Act of 1918 (February 24, 1919). Paragraph 10 is as follows:

"Farmers' or other mutual hail, cyclone, or fire insurance companies, mutual or irrigation companies, mutual or co-operative telephone companies, or *like organizations of a purely local character*, the income of which consists solely of assessments, dues. and fees collected from members for the sole purpose of meeting expenses."

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Unless the plaintiff brings itself fairly within the provisions of paragraph 10, supra, it is clearly liable for the tax provided in section 504 of the Revenue Act of 1917 and section 503 of the Revenue Act of 1918.

[1] These Revenue Acts are laws passed by Congress for the purpose of raising revenue to meet the expenses of the war. Notwithstanding that fact, it is the duty of courts, in construing statutes, to observe the fundamental rule, to ascertain and give effect to the intention of Congress. Eidman v. Martinez, 184 U. S. 578, 583, 22 Sup. Ct. 515, 46 L. Ed. 697; Hartranft v. Weigmann, 121 U. S. 609, 7 Sup. Ct. 1240, 30 L. Ed. 1012; Amer. N. & T. Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821; Lynch v. Union Trust Co., 164 Fed. 161, 90 C. C. A. 147; Disston v. McClain, 147 Fed. 114, 77 C. C. A. 340; Niles v. Central Mfg. Co., 252 Fed. 564, 165 C. C. A. 14.

[2] It is contended by the plaintiff that in interpreting revenue laws courts should consider them strictly in favor of the citizen. Eidman v. Martinez, supra. This is undoubtedly the general rule applicable to the enacting clause of a statute. However, here plaintiff seeks to bring itself within a proviso or a clause exempting certain classes of corporations, associations, and clubs which the act provides shall not be burdened with the tax. In construing such a provision we must be guided by the rule, which has long been adhered to, and which is announced in United States v. Dickson, 15 Pet. 141, 10 L. Ed. 689, where the court uses this language:

" * * * We are led to the general rule of law, which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception, must establish it as being within the words as well as within the reason thereof."

A claim of exemption from taxation must be clearly made out. Bank of Commerce v. Tennessee, 161 U. S. 134, 146, 16 Sup. Ct. 456, 40 L. Ed. 645; Perry Co. v. Norfolk, 220 U. S. 472, 31 Sup. Ct. 465, 55 L. Ed. 548; Vicksburg R. Co. v. Dennis, 116 U. S. 665, 6 Sup. Ct. 625, 29 L. Ed. 770. This controversy exhibits no disagreement as to the general rule with reference to the interpretation of revenue statutes being in favor of the citizen as against the government. However, the disagreement arises as to the manner of construing and applying paragraph 10, supra; the plaintiff contending that it should be construed most favorably to the citizen as against the government.

[3] Paragraph 10, being an exemption statute, is in the nature of a proviso following the enacting clause in a statute of less volume, and we feel that the earlier announced rule applying to provisos applies here. While it is true, in Eidman v. Martinez, 184 U. S. 578, 583, 22 Sup. Ct. 515, 517 (46 L. Ed. 697), the court applied the construction contended for by the plaintiff with reference to all forms of taxation and particularly special taxation, yet in the same paragraph in which it announces the rule and cites authorities the court says:

"*The rule regarding exemptions* from general laws imposing taxes may be different. Cooley on Taxation, 146, In re Enston, 113 N. Y. 174, 177 (sub nom. People v. Sherwood, 3 L. R. A. 464, 21 N. E. 87)"

—demonstrating the purpose of the Supreme Court not to disturb the well-established rule observed by the court and announced in United States v. Dickson, supra.

In our judgment, the Supreme Court in Swann v. Finch, 190 U. S. 143, 23 Sup. Ct. 702, 47 L. Ed. 984, thoroughly settled the law on this subject. There it was sought to recover a "drawback" under a tariff law granting exemption from import duties upon imports brought into the country for treatment and manufacture and afterwards exported. In other words, Congress, by the provisions contained in the tariff law, then before the court, granted a privilege to importers to . draw back the tariff paid upon goods imported which were afterwards exported, within the provisions of the law. The reasons for the provision of that tariff law, of course, are immaterial to the courts. So with reference to paragraph 10, supra. Therefore we believe there can be no doubt that in a case such as the present one, there can be no recovery unless the plaintiff brings itself fairly within the exemption provisions.

[4] However, we do not regard the application of the rule as finally determining this case after all. The material question that addresses itself to the court is: Was it the intention of Congress that such a corporation as the plaintiff should be exempt from taxation? An examination of the entire section 231 discloses that Congress concluded to exempt certain activities, wholly local, neighborhood, or co-operative societies, and such as were not mainly engaged in pursuits for pecuniary profit, but were social, educational, or philanthropic in their purposes. In order that we may determine exactly the class of activities and persons exempted, we should ascertain the intention of Congress from the words used in the statute itself. We do not believe it was the intention to exempt "farmers' or other mutual hail, cyclone, or fire insurance companies," etc., generally, but only such as are "of a purely local character"; nor mutual or co-operative telephone companies, generally, but only such as are purely local in their character. In other words, we do no feel that the words "of a purely local character" are words of limitation only upon the provision "or like organizations," but rather upon all of the especially enumerated businesses set out in the entire paragraph. A proper reading of this paragraph requires the interpolation of a comma after the words "like organizations."

Indeed, reading the statute as here repunctuated, a flood of light is shed upon the purpose of Congress in the preceding lines of that paragraph. To read the words "or like organizations of a purely local character," as distinguished from the preceding words, any hail, cyclone, or fire insurance company that is operated by farmers and upon a mutual plan would be exempted; any telephone company organized upon the mutual or co-operative basis would be exempted, and that even though it operate over an extensive portion of the country. But we believe it was the intention to exempt those organizations which are of the classes named and also of a purely local character. Farmers'

and other mutual companies, for the purposes referred to, of a purely local character, are common and well known throughout the entire jurisdiction. Mutual ditch and irrigation companies are necessarily local in their very nature, while the mutual co-operative telephone companies must be of a purely local character.

[5] At the time of the enactment of these laws "farmers' or other mutual * * * companies * * * telephone companies," or the like, "of a purely local character," were numerous, and the mere naming of one of them was its most perfect description, which was well known and fully understood to mean a local mutual telephone company, such as a farmers' party line with its little exchange, neighborhood anti-horse thief societies, the local farmers' insurance societies, and the like. Such expressions did not include a general life, health, and accident insurance company organized under a general law and doing a general business throughout an entire state, such a concern as the plaintiff, with general offices in Springfield, and subordinate headquarters in Chicago, Decatur, and East St. Louis, and this, even though at the time of the filing of the declaration herein the plaintiff had done no business outside the geographical limits of the state.

We know of no judicial determination that the words "like organizations of a purely local character" mean anything different in a federal statute than they would when used in a state statute, yet this is the contention of the plaintiff here. In writing the statutes under which the tax was levied and collected, the enacting clauses were very far-reaching and inclusive in their scope; but Congress concluded that there were certain local neighborhood community activities throughout the United States which were not operated for profit and should not be taxed. It attempted to describe those things in paragraph 10, supra, by the use of the English language usually and customarily used to describe them. To hold otherwise would be to open the field for the great life insurance companies now doing business throughout the United States upon the mutual plan, to apportion certain portions of the United States amounting to less than the whole for their operations, and thus bring themselves within the meaning of the exemption.

But it is claimed by the plaintiff that its income consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses. The same is true of the great mutual companies, for at the close of each year, if the premiums amount to more than enough to meet the expenses, etc., the remainder is returned to the policy holders under the guise of a "dividend." We feel that the plaintiff is not clearly within the provisions of paragraph 10, so as to be entitled to exemption from taxation.

In the light of these views the court will find the issues for the defendant, and judgment may be entered accordingly.