IN RE ESTATE OF EDMUND E. WOOLSEY.
OTOE COUNTY, APPELLEE, V. FRED A. WOOLSEY ET AL., APPELLANTS.

FILED OCTOBER 20, 1922.     No. 21614.

Taxation: INHERITANCE TAX: VALUATION OF PROPERTY. Sections 6153 and 6163, Comp. St. 1922, being ambiguous as to the basis of valuation of property subject to inheritance tax, *held*, construing the whole statute, that the proper basis of valuation by the county judge is the "then cash value" of the property at the time of the death of the decedent, which is ascertained by finding the amount of money the property would produce if offered and sold for cash upon the open market at that time.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. Reversed.

*Pitzer, Cline & Tyler,* for appellants.

*George H. Heinke,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, ALDRICH, DAY and FLANSBURG, JJ.

ALDRICH, J.

Edmund E. Woolsey, a resident of Otoe county, Nebraska, died intestate May 20, 1919. His estate consisted of 1,467.94 acres of farm and pasture land in Otoe county, Nebraska, 729.14 acres of farm and pasture land in Cass county, Nebraska, and considerable personal property. On March 2, 1920, the county court of Otoe county entered an order finding the "fair market value" of the estate and assessing inheritance tax on that value as found. The appellants, sole heirs at law of Edmund E. Woolsey, deceased, excepted to the value of the land in Otoe county as

found by the county court, which was $412,205.50, and appeal was taken to the district court, where the "fair market value" of the Otoe county land was found to be $387,325. The case is now brought to this court on appeal from the district court, presenting for review and determination here the issue as to the value of the 1,467.94 acres of land in Otoe county. The valuation of the remainder of the estate is not questioned in this appeal.

A number of assignments of error are made, but in the view we take of the case it is unnecessary to discuss them all. The result of the case depends upon the construction of the Nebraska inheritance tax law found in sections 6153-6172, Comp. St. 1922, being sections 6622-6641, Rev. St. 1913, as amended in 1921. The statute is ambiguous and confusing as to what shall be taken as the basis of valuation.

The first-named section provides that the inheritance tax shall be based upon a certain percentage of the *"clear market value"* of the property received by each person, while in section 6163, Comp. St. 1922, treating of the subject of appraisement of estates, it is provided, in substance, that the county judge, whenever an estate appears to be subject to the inheritance tax, may appoint some competent person as appraiser, who, after giving notice, as provided in the statute, shall "appraise the property at the *fair market value of the same.*" He is given power to compel the attendance of witnesses and to take the evidence of such witnesses under oath concerning the value of the property. He is required to "make a report thereof and of such value in writing to the county judge with the depositions of the witnesses and such other facts relating thereto as the county judge may by order require, to be filed with the records of the county court; or the said county judge may by order fix a day and give notice to all interested parties and at such time appraise the property at the fair market value of the same; and from such appraisal as made by the county judge or report made by the appraiser, the county judge shall forthwith

determine and fix the *then cash value* of all estates, annuities and life estates for terms of years growing out of said estates, and the tax to which the same is liable." Construing the statute as a whole the "then cash value" refers to the cash value at the time of death of decedent.

The question now presented is whether the "fair market value" of the property, or the "clear market value" or the "then cash value" is the true measure of value of the property liable to inheritance tax. The county court and district court evidently were of the opinion that these terms are synonymous. The evidence in the record seems practically, but not entirely, to be confined to what is the "fair market value" or the "value of the property," or "what the property is worth," and not to the value in cash at the time of the death of the decedent. When we consider that the property of decedents' estates in order to pay legacies has very frequently to be converted into money, it seems to us that the intention of the legislature was that the property should be valued at the amount of money which it would produce if offered and sold for cash at the time of the death of the decedent. The language of the statute also seems to require this interpretation, since under section 6163, Comp. St. 1922, while the appraiser is required to report the "fair market value" of the property, the county judge is given power to require such other facts relating to the property as he may deem necessary to be furnished by the appraiser, and it is provided, "from such appraisal as made by the county judge or report made by the appraiser, the county judge shall forthwith determine and fix the *then cash value* of all estates." If the "fair market value" and the "then cash value" were synonymous, the county judge would only be required to fix the fair market value; but, considering the provisions that the tax shall only be upon the "clear market value," we are satisfied that the "clear market value" and the "then cash value" are intended to be synonymous.

It is a well-settled fact that farms and real estate gen-

erally in this state are usually sold partly upon credit, payments sometimes extending over long series of years, and that a higher price can usually be obtained for land sold upon this plan than for that sold for cash. The clear market value upon which the rate of tax operates, we consider to be the cash market value at the time of the death of the deceased, or, in other words, what the property would bring if then offered for cash upon the market.

In *Lynch v. Union Trust Co.*, 164 Fed. 161, it was held: "When congress employed the expressions 'actual value' and 'clear value' it very evidently intended to convey the idea of definite or certain value—something in no sense speculative." It was also held in that case that ambiguous statutes imposing special burdens should be construed most strongly against the taxing power. This is a general rule as to such statutes.

We are convinced that, had the witnesses been confined to giving their opinion as to what each separate tract of land would have brought, if offered for cash upon the open market at the time of the death of the decedent, the values given would be materially different from those fixed. This case is important, not so much for the result in the controversy before us, but because of the fact that upon its proper decision depends the rights of every person inheriting property within the state of Nebraska.

Another point urged merits attention. A number of witnesses for the county were county officers or persons who had formerly occupied such positions. Three were county commissioners, one was the county clerk, three were ex-county commissioners, and one a precinct assessor. Their valuations were high in comparison with those of appellants' witnesses, who were mainly farmers. The fact that appellee's witnesses were or had been county officials, their close association with county affairs, and the feeling which county officers sometimes have that a large estate should pay a liberal inheritance tax without question, perhaps unconsciously influenced them to appraise the land too high. This would naturally be expected, and

yet, on the other hand, the testimony of any person directly interested in the estate would be subject to the same imperfection. In any event, the evidence of interested or biased parties should be closely scrutinized, and the value should, if possible, be fixed by witnesses having competent knowledge and yet having no interest in the controversy, if such witnesses can be found.

Another point is worthy of mention. It appears that some of the witnesses for appellee were furnished with a, list of the various pieces of land setting forth the values placed upon them separately by the county judge. This these witnesses had and used for purposes of reference at the trial. Such a practice is not to be commended.

On the whole case we are satisfied that the judgment should be reversed and the cause remanded to the district court for a new trial with the object of ascertaining the cash value of the property at the time of the death of Edmund E. Woolsey, deceased.

REVERSED AND REMANDED.