November 21, 1910.

————o————

5088.

(Court of Appeal, Parish of Orleans).

## ANTONIO OVIEDE vs. WELLS, FARGO & CO., EXPRESS.

The term "State," used without qualification, generally means one of the United States of America, and does not include a foreign State or Nation.

Appeal from the Civil District Court, Division "C."

W. H. Byrnes, P. D. Olivier, for plaintiff and appellant

J. Armstrong, H. C. Leake, for defendant and appellee.

ST. PAUL, J.,—Defendant is an express company, en-

gaged in forwarding merchandise and other personal property .

Plaintiff, a resident of Noya, in the Kingdom of Spain, delivered to defendant in this city, certain trunks to be forwarded to his home in Spain. The bill of lading contained a provision to this effect:

> 'If the company has no office at destination it shall carry said property to its office nearest or most convenient to destination and there notify consignee or deliver said property to connecting carrier to complete transportation, and the company shall not be liable for any loss or damage accruing after giving such notice to consignee. or after delivery to connecting carrier.''

Defendant had no office at Noya, Spain, and its office "nearest and most convenient to destination" was the Port of New York.

Accordingly defendant carried the trunks to said Port of New York and there delivered them in good order and condition to the Gans Steamship Company, a connecting carrier, to complete transportation.

But on reaching destination it was found that the trunks had been broken into and their contents rifled, personal effects to the value of $208 having been abstracted and stolen.

It is clear that under the terms of the bill of lading defendant is not liable to plaintiff for a loss occurring after delivery to the connecting carrier, unless the provisions of paragraph 7, Chapter 3591, U. S. Statutes at Large, p. 595, commonly known as the Interstate Commerce Act of 1906, apply to this shipment.

This paragraph reads as follows:

> "That any common carrier, railroad, etc., receiving property for transportation **from a point in one State to a point in another State** (black-letter ours)

shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or any common carrier, railroad or transportation company to which said property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under any existing law.''

We do not think that this paragraph applies to a shipment of this character. A shipment from a point in the State of Louisiana to a point in the Kingdom of Spain, is not a shipment ''from a point in one State to a point in **another State.''**

Beginning with the Constitution itself, and through the whole legislation of more than one hundred years, State, as well as Congressional, the term ''State,'' when applied without qualification, has uniformly been used to designate one of the political units of this Federal Republic. On the other hand, when the reference has been to a Government or Territory beyond the jurisdiction of the United States the term invariably used has been **Foreign State, Foreign Nation, Foreign Power, or Foreign Territory.** The instances are too numerous for any attempt at citation, but the Constitution alone furnishes a number of them.

Even the very act under discussion recognizes the distinction between the terms ''State'' and ''Foreign Nation'' and in its very first paragraph emphasizes that distinction by using the two terms in manifestly different senses; but it nowhere provides that thereafter the

one term shall include the other.

The courts have repeatedly held that the term "State" did not include a Foreign State or Territory, or even a Territory of the United States. **Eidman vs. Martinez, 184 U. S. 578; Ex parte Morgan, 20 Fed. Rep. 298; U. S. vs. Ames, 95 Fed. Rep. 453.** And we have not been furnished with, nor do we ourselves know of, a single instance in which the contrary has been held.

The judgment appealed from appears to us correct, and must be affirmed.

November 21, 1910.

————o————

5100.

(Court of Appeal, Parish of Orleans).