NILES, Collector of Internal Revenue, v. CENTRAL MANUFACTURERS' MUT. INS. CO.

SAME v. OHIO UNDERWRITERS' MUT. FIRE INS. CO.

(Circuit Court of Appeals, Sixth Circuit.    June 10, 1918.)

Nos. 3119, 3120.

INTERNAL REVENUE ☞19(1)—STAMP TAX ON INSURANCE COMPANIES—MUTUAL COMPANIES.

A mutual fire insurance company, organized under the law of Ohio, without capital stock, and insuring property only of its members, is within the exemption of Act Oct. 22, 1914, and not subject to the stamp tax on its policies imposed thereby, although under the state statute it may and does charge a cash premium in advance, and maintains a reserve, on which it incidentally earns interest.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Actions by the Central Manufacturers' Mutual Insurance Company and by the Ohio Underwriters' Mutual Fire Insurance Company against Frank B. Niles, Collector of Internal Revenue for the Tenth

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

District of Ohio. Judgments for plaintiffs, and defendant brings error. Affirmed.

E. S. Wertz, U. S. Atty., of Cleveland, Ohio, and Edwin J. Lynch, Asst. U. S. Atty., of Toledo, Ohio, for plaintiff in error.

Vorys, Sater, Seymour & Pease, of Columbus, Ohio, and H. L. Conn, of Van Wert, Ohio, for defendants in error.

Francis B. James, of Cincinnati, Ohio, amicus curiæ.

Before WARRINGTON, MACK, and DENISON, Circuit Judges.

MACK, Circuit Judge. The two cases are alike, except as to the amounts involved. The sole questions raised by the demurrers of plaintiff in error to the petitions of defendants in error for return of moneys paid under duress is whether policies issued by a fire insurance company, incorporated under the laws of Ohio, without capital stock or stockholders, doing only a mutual fire insurance business, and that only with its members, all of whom, and who alone, are its policy holders, must be stamped for one-half of one cent on each dollar of premium, under Act Oct. 22, 1914 (38 Stat. 762, c. 331).

The precise question is whether such a company comes within the exemption clause of the act, reading, "Provided, that purely co-operative or mutual fire insurance companies or associations carried on by the members thereof for the protection of their own property and not for profit, shall be exempted from the tax herein provided," notwithstanding that, under the laws of Ohio, the company (a) is required to and does charge a cash premium payable at the time of delivery of the policy; (b) is required to and does maintain an unearned premium reserve of a definite percentage of the cash premiums on unexpired risks; (c) is permitted to and does maintain a surplus in excess of this reserve, as an additional security to the policy holders; (d) earns interest on this reserve and surplus by investing them, as required by the law of the state, in interest-bearing securities; and (e) for further security of the members makes the cash premium in excess of the amount estimated as sufficient for protection and payment of losses, paying the member, at the expiration of each policy, so much of the cash premium paid by him as is not absorbed by losses and expenses.

The statutes of Ohio authorize the incorporation of at least two kinds of mutual fire insurance companies—those like defendants in error, carrying reserves and requiring premiums in advance of loss; and those which levy only such assessments as are necessary to meet specific losses sustained and specific incidental expenses. But, while there are radical differences in character, both kinds of companies are mutual; both are purely co-operative, in that they have no stock or stockholders and include in their membership only policy holders; both are carried on by the members solely for the protection of their own property, in that neither kind insures the property of any one else. There is, however, this difference between them: The one class always has a safety fund in hand; the other depends upon the personal security and solvency of the membership. Purely incidental to the existence of such a fund is the interest earned thereon; this interest

may be conceded to be a profit that accrues to the members from the enforced investment, a profit that would not ordinarily be earned by a company that levies its assessments solely for immediate distribution. And yet even such a company might earn some slight interest on daily bank balances, because of the practical impossibility of making immediate distribution of daily receipts from assessments.

While, in companies like defendants in error, the earning of this interest is more clearly foreseen and contemplated, nevertheless in the one class, as in the other, the business is not "carried on" for this incidental profit, which merely operates slightly to reduce the cost of protection, to diminish the amount to be taken from the premium deposits in order to meet losses; the object of the business in each class is, not to undertake investments on behalf of the members, but solely to protect more effectively the members' property.

The distinction drawn in the act is between those mixed mutuals, which, though commonly called mutuals, are in fact also doing a non-mutual business for profit, and the strictly mutual companies; not between the mutuals which carry a reserve and surplus, and those which levy assessments only after each loss. A mere incidental profit earned by way of interest on its invested safety funds, or on its bank balances, does not change the purely mutual character of the company, or indicate that its business, though thus earning a profit, is "carried on for profit." And if the text or context of these words could be deemed to create an ambiguity, as in our judgment they cannot, the doubt would be resolved in favor of the taxpayer; the question is not, as in Perry v. Norfolk, 220 U. S. 480, 31 Sup. Ct. 465, 55 L. Ed. 548, that of an alleged contractual exemption from general taxation laws, but, as in Eidman v. Martinez, 184 U. S. 578, 583, 22 Sup. Ct. 515, 46 L. Ed. 697, that of the class of corporations intended by the act to be included in or exempted from its special tax provisions.

Under a similar provision in the Spanish War Tax Act of June 13, 1898 (30 Stat. 448, c. 448), mutual fire insurance companies like defendants in error were not required to pay the tax, except in two or three sporadic cases; the Treasury rulings in these few cases could not, under these circumstances, be deemed to have established a contrary uniform settled practice and contemporaneous departmental construction of the act.

Judgments affirmed.