**GOLDSBOROUGH v. BURNET, Com'r of Internal Revenue.**

No. 3039.

Circuit Court of Appeals, Fourth Circuit. Jan. 13, 1931.

PARKER, Circuit Judge, dissenting.

William L. All, of Baltimore, Md., for petitioner.

William Cutler Thompson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and W. E. Davis, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and McCLINTIC, District Judge.

NORTHCOTT, Circuit Judge.

Petitioner is a citizen of Baltimore, Md. His mother-in-law resided in his home and was considered a member of his household during the period of ten years prior to the year 1925. During the time of the residence of his mother-in-law with petitioner, she had no income or revenue of any kind other than the amount of approximately $311 a year,

which was derived from investments valued at or about $6,000. This income she used as far as it would go towards her maintenance and support; the balance, a much larger amount necessary for such purposes, was supplied by the petitioner, who had, however, never claimed any deduction from income taxes for such aid given to his mother-in-law. During the year 1922, the said mother-in-law, solely at the instance of the petitioner, purchased certain corporate securities, and at the time of the purchase the petitioner stated to his mother-in-law that should she sustain a loss by reason of such purchase he (the petitioner) would reimburse her for the amount so lost. During the year 1922, petitioner's mother-in-law sustained a loss as a result of said purchase, and the petitioner, in accordance with his promise, paid his mother-in-law the sum of $5,757.25. The petitioner deducted from his income as a loss in said year 1922 the said sum of $5,757.25, which deduction was disallowed by the Commissioner of Internal Revenue. From this action of the Commissioner petitioner applied to the Board of Tax Appeals for redetermination of the deficiency. Upon hearing before the Board of Tax Appeals that Board sustained the action of the Commissioner, and refused to allow the deduction in question from petitioner's gross income, from which action of the Board of Tax Appeals petitioner brought this petition to review.

The statute does not permit the deduction from gross income of all losses which a taxpayer may suffer. Section 214(a) of the Revenue Act of 1921 (42 Stat. 239) specifically designates the kind of losses which may be deducted as follows:

"Sec. 214. (a) That in computing net income there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

"(6) Losses sustained during the taxable year of property not connected with the trade or business * * * if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise. * * * "

It is clear that if the deduction is permitted at all it must come under paragraph 5 of section 214(a). It is contended on behalf of petitioner that he entered into the transaction for profit, because of the fact that if his mother-in-law had gained from the transaction he (the petitioner) would have been correspondingly benefited, because, as his mother-in-law's income increased, the amount he would have to contribute to her maintenance and support would decrease. However commendable we may feel was petitioner's course in reimbursing his mother-in-law for her loss, we cannot but reach the conclusion that the benefit that would have accrued to him had his mother-in-law gained in the transaction is too vague and indefinite to amount to a profit. The profit in the transaction, if there had been any profit, would have gone directly to petitioner's mother-in-law and not to the petitioner, and the petitioner would have benefited only in an indirect way.

Profit has been defined as "the advantage or gain resulting from the investment of capital, or the acquisition of money beyond the amount expended; a pecuniary gain." Brooks Bros. v. Cassebeer, 157 App. Div. 683, 142 N. Y. S. 781, 782. See, also, Vidal v. South American Securities Co. (C. C. A.) 276 F. 855, 871, and People v. Keys, 178 App. Div. 677, 165 N. Y. S. 863. The treasury rulings have been consistent with this definition. See A. R. R. 398, 4 C. B. 156.

As stated in Read v. Tidewater Coal Exchange, Inc., 13 Del. Ch. 195, 210, 116 A. 898, 904, profit "must be something of a tangible or pecuniary nature. Intangible benefits not capable of measurement in definite terms, though of value to the recipients, cannot be called profits."

The same principle in different connections has been recognized by the Supreme Court, which on numerous occasions has said that taxation is eminently practical and not concerned with theoretical concepts. Tyler v. United States, 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758; Eisner v. Macomber, 252 U. S. 189, 211, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Weiss v. Stearn, 265 U. S. 242, 254, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; and Weiss v. Weiner, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720. In accordance with that principle, a diminution of a loss is not income. See Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886.

It is argued on behalf of petitioner that the transaction was a joint venture, but we do not think so. Joint venture was fully discussed by this court in Dexter & Carpenter, Inc., v. Houston et al., 20 F.(2d) 647, 651,

and it was there held that a "joint venture" was a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation. * * * "

Here there was no venture for the joint profit of the petitioner and his mother-in-law in the legal sense of the word profit.

The amount claimed as a deduction by petitioner is not allowable, and the decision of the Board of Tax Appeals is affirmed.

PARKER, Circuit Judge (dissenting).

I regret that I cannot agree with the majority of the court, but I am satisfied that the taxpayer was entitled to the deduction claimed. The income tax law taxes only the net income of the taxpayer. Its purpose is to tax in accordance with ability to pay; and this ability is measured by net income, i. e. by the amount which he has received during the year after losses from business ventures and casualties have been deducted. When the taxpayer here sustained the $5,700 loss in question, there can be no question that in any fair sense of the term his net income was decreased by that amount.

If the payment to the mother-in-law had been a gift, the deduction would not, of course, be allowable. It was not a gift, however, but a payment under a legally binding promise. Taxpayer's mother-in-law had only a small amount of property. Taxpayer advised her to invest it in a certain manner and promised that he would make good any loss which she might sustain if she should do so. She made the investment and sustained the loss. He was not only morally, but also legally, bound to reimburse her; for a sufficient consideration to support the promise is found in the fact that the mother-in-law made the investment because of same. It is well settled that a consideration may consist in a detriment to the promisee as well as in a benefit to the promisor. Williston on Contracts, §§ 102 and 113.

In Herschel v. Jones, 1 B. T. A. 1226, a deduction was allowed where payment was made in reimbursement of a loss sustained by another, where there was no legal but only a moral obligation of reimbursement. In that case it appeared that James J. Hill had invested money in a firm of which taxpayer was a member. A loss was sustained, and taxpayer in the year 1911, although under no legal obligation to do so, gave Hill his note in reimbursement of the loss, considering that he was under a moral obligation to do so.

He paid the note in the year 1920 and was allowed to deduct the payment as a loss sustained in that year. In the case at bar there can be no question that the taxpayer was under a moral obligation to reimburse his mother-in-law; but, as above stated, I think that he was under a legal obligation as well.

It is said that the taxpayer is not entitled to the deduction because not incurred in a transaction entered into for profit and hence not within the language of the section under which it is claimed. I think, however, that this gives too narrow an interpretation to the section. It is well settled that a taxing statute is to be strictly construed against the government and in favor of the taxpayer. U. S. v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547; Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211. And a liberal construction is to be given words of exception confining the operation of the tax. Eidman v. Martinez, 184 U. S. 578, 583, 22 S. Ct. 515, 46 L. Ed. 697; 33 C. J. 286, 306. While the section relied on authorizes deductions of losses only on transactions entered into for profit, I think that the phrase "for profit" was intended to distinguish ordinary business transactions, although not a part of the regular business of the taxpayer, from such transactions as those entered into for personal convenience or pleasure or for purposes of charity, and was not intended to limit the deduction to transactions from which the taxpayer personally intended to realize a profit for himself. Thus, a loss sustained in the purchase and sale of a home, or in operating a charity hospital, or in maintaining a stable of blooded horses for pleasure, would clearly not be a deductible loss. But there is no reason why loss upon an ordinary business transaction, such as a purchase of corporate stock, should not be deductible, even though the taxpayer may have known that he would sustain a loss and not a profit when he made it, and may have acted not for profit but from a sense of personal honor or moral obligation.

The transaction in question came clearly within the spirit of the section, and I think it came within its letter also. The guaranty against loss cannot be separated from the investment of the mother-in-law's property, as neither would have been made without the other; and when the two are considered together the transaction was clearly one entered into for profit. The taxpayer was en-

tering into an arrangement by which his mother-in-law's funds would be invested. He was doing this that a profit might be realized on the investment; and he gave the guaranty under which he sustained the loss in order that the investment might be made and the profit realized. It is true that he did not anticipate a profit for himself from the transaction, but the statute does not prescribe that he should have entered into it for profit to himself.

Under the opinion of the court, the taxpayer would have been entitled to the deduction claimed if the agreement with his mother-in-law had contemplated that he should share in the profits of the investment or if he had been paid any amount, however small, for the promise which he gave. If he had made the investment of his own funds under a promise to give her the profits realized therefrom, I assume that no one would contend that he would not be entitled to a deduction of the loss. And it seems to me to be drawing too fine a distinction, and one not warranted by the language of the statute, to deny it in a case such as this, where he has sustained the loss by reason of his promise in a transaction entered into for profit, although it was intended that the profit should go to his mother-in-law and not to him.

If in determining the character of the transaction we disregard the investment of the mother-in-law's funds and look only to the guaranty of the taxpayer, we have a loss sustained under an ordinary contract of guaranty. There can be no question that ordinarily a loss so sustained is deductible. Dillon v. Com'r, 9 B. T. A. 177; Sass v. Com'r, 7 B. T. A. 557. And it does not seem to me to furnish ground of distinction that the guarantor made the guaranty, not for profit to himself, but to induce an investment which it was hoped would be profitable to another. Can there be reason in a distinction which would allow a taxpayer to deduct a loss sustained under a guaranty given to secure an investment in his own business, but would disallow the deduction if the guaranty were given to secure the investment in the business of his son? I do not think so. The ability to pay income tax is decreased as much in the one case as in the other; and in neither is there the reason for disallowing the deduction that there is in the case of transactions entered into for personal pleasure or charity, where the transactions in which the losses are sustained are financed from the net income of the taxpayer.