**REVERSE AND RENDER; Opinion Filed March 9, 2020**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01113-CV

## MCKINNEY MILLENNIUM, LP, Appellant
## V.
## COLLIN CENTRAL APPRAISAL DISTRICT, Appellee

### On Appeal from the 366th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 366-03033-2015

## OPINION

Before Justices Whitehill, Schenck, and Rosenberg[1]
Opinion by Justice Schenck

McKinney Millennium, LP ("McKinney") appeals the trial court's grant of summary judgment in favor of Collin Central Appraisal District ("CCAD") and its denial of McKinney's summary judgment motion. In four issues, McKinney complains the trial court erred in concluding CCAD properly assessed property taxes on McKinney's property to include an additional tax following a change in use. For the reasons discussed below, we reverse the trial court's order granting summary judgment in favor of CCAD and render judgment in favor of McKinney.

### BACKGROUND

In March 2014, McKinney purchased 6.314 acres of land in Collin County ("the Property"). For several years prior to the purchase, the Property was used for agricultural purposes

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned

and was assessed property taxes as "qualified open-space land" pursuant to section 23.52 of the Texas Tax Code. In April 2014, CCAD provided notices of appraised value to the prior owners of the Property, which again assessed the Property as qualified open-space land. McKinney timely paid all of the 2014 taxes for the Property.

On March 23, 2015, CCAD sent McKinney a "Notice of Change of Use Determination" in which it notified McKinney that pursuant to section 23.55 of the tax code, CCAD determined the Property was not used for agriculture as of July 1, 2014, and therefore no longer qualified for appraisal as agricultural use. The Notice informed McKinney that it would be assessed "an additional rollback tax equal to the tax savings realized for the previous five years." The Notice went on to state that "[i]n addition to the 5 year change of use rollback tax, acreage effected [sic] by the rollback will be adjusted to market value for the current tax year, as listed below." CCAD then supplemented the 2014 Appraisal Roll for the Property.

McKinney filed a protest with the Collin Appraisal Review Board ("ARB"). Although McKinney did not contest that the use of the Property changed during 2014 or the imposition of additional taxes for the previous five years, McKinney did protest the supplemented 2014 Appraisal Roll, contesting the "adjustment" of the Property's 2014 assessed value to full market value for that year. On June 11, 2015, the ARB issued orders granting McKinney's protests and reversing CCAD's adjustments.

On July 31, 2015, CCAD appealed the ARB's orders in a suit filed against McKinney and the prior owner. McKinney responded with a counterclaim seeking reinstatement of the ARB's orders and recovery of attorney's fees. McKinney and CCAD filed competing motions for summary judgment. In CCAD's motion for summary judgment, it relied on a rule promulgated by the Texas Comptroller requiring it to assess adjusted taxes on the Property for 2014. It further argued the tax code directed the Comptroller to promulgate rules setting forth the method for

appraising qualified open-space land, and it was pursuant to that authority that the Comptroller promulgated the rule requiring appraisal districts to assess land in the year of change of use. In McKinney's motion for summary judgment, it argued the tax code did not authorize any tax in the year of change of use, the tax code did not authorize the Comptroller to promulgate any rule requiring such tax, and the rule relied on by CCAD conflicted with the tax code.[2] On August 24, 2018, the trial court signed an order granting CCAD's motion for summary judgment and denying McKinney's motion for summary judgment. McKinney filed this appeal.[3]

## DISCUSSION

We review a trial court's summary judgment rulings de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, 559 S.W.3d 192, 197 (Tex. App.—Dallas 2017) (mem. op.), *aff'd*, No. 17-0850, 2019 WL 2147205 (Tex. May 17, 2019). Both parties moved for summary judgment on traditional grounds and thus each bore the burden of establishing that there are no issues of material fact and it is entitled to judgment as a matter of law. *See id.* When both parties move for summary judgment and the trial court grants one party's motion for summary judgment and denies the other party's motion, we can consider both motions, review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Id.*

In four issues, McKinney argues the trial court erred in concluding CCAD properly adjusted the Property's appraised value. First, it urges Texas law forbids imposition of taxes without clear, unequivocal expression of legislative intent. Second, it argues the Texas Legislature neither enacted an additional "change year" tax on qualified open-space property, nor

---

[2] McKinney's motion also requested the trial court grant McKinney its attorney's fees in the event the trial court granted its motion for summary judgment.

[3] As the trial court's order on summary judgment disposed of all claims against the prior owner and the prior owner did not file a notice of appeal, the prior owner is not a party to this appeal, and we need not discuss this entity any further.

unambiguously manifested any intent for either the State Property Tax Board or the Comptroller to create such a tax. Third, it contends this Court should follow a decision from the San Antonio Court of Appeals, *Bexar Appraisal District v. Sivage Investments, Ltd.*, Nos. 04-14-00227-CV, 04-14-0028-CV, 04-14-0029-CV, 04-14-00230-CV, 2014 WL 6475369 (Tex. App.—San Antonio Nov. 19, 2014, no pet.) (mem. op.), which held that a similar rule issued by the Comptroller in the Agricultural Appraisal Manual ("Manual") was contrary to the tax code and thus void. Fourth, McKinney argues the fact that the Comptroller removed the rule relied upon by CCAD after the issuance of *Sivage* indicates that decision should control in this case.

CCAD responds the Legislature provided the Comptroller with the authority to promulgate a rule to assess property in a "change of use" year to recapture the difference between the Property's market value and its agricultural use. CCAD relies on section 23.52(d) of the tax code, which provides "[t]he comptroller by rule shall develop and distribute to each appraisal office appraisal manuals setting forth this method of appraising qualified open-space land, and each appraisal office shall use the appraisal manuals in appraising qualified open-space land." *See* TEX. TAX CODE ANN. § 23.52(d). CCAD urges that the directive to lay out the method of appraisal also authorizes the Comptroller to determine which years are subject to additional tax.

At bottom, the issue here is one of statutory construction, whether section 23.52(d) of the tax code properly authorizes CCAD to reassess the property taxes McKinney owes for the year of change. *See id.* § 23.52(d). This case presents an important and recurring statutory construction problem addressed in only one memorandum opinion from the San Antonio Court of Appeals, which held contrary to what was set forth in the Manual at the time CCAD reassessed the Property's 2014 taxes. *See Sivage*, 2014 WL 6475369, at *2. As discussed below, we conclude there is no clear language in section 23.52(d) of the tax code that indicates the Legislature intended

to tax property in the year of change of use or to delegate the authority to impose such a tax to the Comptroller. Further, the argument that we should defer to the Manual is unpersuasive.[4]

## I.      *Pro-taxpayer Presumption*

We begin our analysis by noting that "[t]he reach of an ambiguous tax statute must be construed 'strictly against the taxing authority and liberally for the taxpayer.'" *See TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013) (quoting *Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012) (per curiam)). In other words, a tax must apply unequivocally if it is to apply at all. *See id.* As the Texas Supreme Court has observed, "the sovereign is bound to express its intention to tax in clear and unambiguous language." *Id.* (quoting *Eidman v. Martinez*, 184 U.S. 578, 583 (1902)). One reason for the presumption is that taxpayers should be given notice of their tax obligations before the State imposes them. *Id.* Furthermore, agency deference does not displace strict construction when the dispute is not over how much tax is due but, more fundamentally, whether the tax applies at all. *Id.* at 182–83.

The Legislature set forth provisions for appraisal of land that qualifies as open-space land. *See* TAX § 23.51(1).[5] In its motion for summary judgment, McKinney argued that while the tax code authorizes an "additional" backward-looking tax to recapture reduced value over the preceding five years, it did not authorize any tax in the year of change of use, it did not authorize

---

[4] CCAD argues this Court may affirm the summary judgment on the ground that McKinney was required to file a new application for appraisal as "ag" land, but failed to do so, and thus the taxes were properly based on the Property's market value. *See* TAX § 23.54 (a) (requiring application for appraising eligible land as "ag" land), (e) (permitting chief appraiser with good cause to believe land no longer eligible for appraisal to require new application). However, this ground was not raised in the trial court. Accordingly, we do not address this argument. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (holding summary judgment may not be affirmed on appeal on ground not presented to trial court).

[5] "Qualified open-space land" means land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use or to production of timber or forest products for five of the preceding seven years or land that is used principally as an ecological laboratory by a public or private college or university. Qualified open-space land includes all appurtenances to the land. For the purposes of this subdivision, appurtenances to the land means private roads, dams, reservoirs, water wells, canals, ditches, terraces, and other reshapings of the soil, fences, and riparian water rights. Notwithstanding the other provisions of this subdivision, land that is currently devoted principally to wildlife management as defined by Subdivision (7)(B) or (C) to the degree of intensity generally accepted in the area qualifies for appraisal as qualified open-space land under this subchapter regardless of the manner in which the land was used in any preceding year.

the Comptroller to promulgate any rule requiring such tax, and the Manual guidance relied on by CCAD conflicts with the tax code.  In its competing motion for summary judgment, CCAD argued the tax code directed the Comptroller to promulgate rules setting forth the method for appraising qualified open-space land and it was pursuant to that authority that the Comptroller promulgated a rule regarding assessing land in the year of change of use, which rule CCAD followed when assessing adjusted taxes on the Property for 2014.

## II.    Bexar Appraisal District v. Sivage Investments, Ltd.

As noted above, McKinney points us to *Sivage*, a memorandum opinion in which the San Antonio Court of Appeals addressed an issue similar to that here: whether the tax code provided authority to the Comptroller to promulgate a rule to reappraise property and assess taxes on its full market value for the year when a property's use changes from one of qualified open-space.  *See Sivage*, 2014 WL 6475369, at \*1–2.  In *Sivage*, the Bexar Appraisal District ("BAD") argued that section 23.52(d) authorized the Comptroller to promulgate rules the appraisal district must follow. *See id.*  The *Sivage* court noted administrative agency rules must not exceed statutory authority and turned to examine the statutory authority found in section 23.55, which addresses "change of use of land." *See id.*  Subsection (a) of section 23.55 provides for "an additional tax . . . equal to the difference between the taxes imposed on the land for each of the five years preceding the year in which the change of use occurs . . . and the tax that would have been imposed had the land been taxed on the basis of market value." *See* TAX § 23.55(a).  The *Sivage* court concluded section 23.55 authorized the appraisal district to assess only the five-year rollback penalty and thus the challenged rule conflicted with the statute.  *See Sivage*, 2014 WL 6475369, at \*1–2.  We agree with the reasoning of the *Sivage* court and conclude there is no support in section 23.55(a) for the Comptroller to promulgate a rule requiring an appraisal district to assess additional taxes for the year of the change of use.

CCAD attempts to distinguish *Sivage* by noting the decision did not address whether section 23.52(d) provided the Comptroller with the authority to promulgate a rule requiring additional taxes for the "change of use" year. Accordingly, we now address section 23.52(d).[6]

### III. *Section 23.52(d)*

CCAD argues that section 23.52(d) provides the Comptroller with the authority to promulgate a rule in the Manual to appraise open-space land, specifically the following rule titled Taxes for the Year that the Use Changes. The Manual advised:

> If land changes to a non-qualifying use from a qualifying one after the appraisal review board has approved the appraisal records, the land is back assessed for the difference between the property's market value and its agricultural use value. The assessor sends a supplemental bill for taxes on the added value. This amount becomes delinquent on the same date as the original tax bill for the property. If those taxes have been paid, the supplemental bill becomes delinquent on February 1 of the year following the date the bill is mailed or the first day of the next following month that allows the property owner 21 days to pay the tax, whichever is later.

CCAD points to section 23.52(d) of the tax code, which provides "[t]he comptroller by rule shall develop and distribute to each appraisal office appraisal manuals setting forth *this method* of appraising qualified open-space land, and each appraisal office shall use the appraisal manuals in appraising qualified open-space land." TAX § 23.52(d) (emphasis added). CCAD contends that this section provides the Comptroller with the authority to promulgate a rule to require appraisal districts to "back assess" land for the difference between the property's market value and its agricultural use value. There is no definition of the word "method" in the tax code. We do note that the only other use of "method" within section 23.52 is in subsection (a), which provides "[t]he appraised value of qualified open-space land is determined on the basis of the category of the land, *using income capitalization methods* applied to average net to land." *See id.* § 23.52 (a) (emphasis

---

[6] CCAD also argues section 23.01(a) provided the Comptroller with the authority to promulgate a rule in the Manual to appraise open-space land. However, CCAD did not raise this argument below to the trial court. Accordingly, we do not address this argument. *See Page*, 315 S.W.3d at 532.

added).[7] Thus, "method" is used within this section to refer to *how* to value property for purposes of calculating the tax not *whether* to "back assess" property in the first instance. Accordingly, we do not read "method" in section 23.52(d) to provide the Comptroller with authority to promulgate a rule in the Manual to assess taxes for the year of change in addition to those taxes required by section 23.55(a).

We conclude CCAD failed to establish as a matter of law that it had the authority to assess additional taxes on the Property in the "change of use" year. We further conclude McKinney established as a matter of law that CCAD lacked the authority to assess additional taxes on the Property in the "change of use" year. Accordingly, we conclude the trial court erred in granting summary judgment in favor of CCAD and denying summary judgment in favor of McKinney.

## IV.    *Attorney's Fees*

At the conclusion of its brief, McKinney requests this Court grant summary judgment in its favor on all issues requested in its motion for summary judgment. In its counterclaim and its motion for summary judgment, McKinney requested its attorney's fees pursuant to section 42.29 of the tax code. However, McKinney has not presented this Court with any arguments specifically with respect to its request for attorney's fees below. While McKinney's brief is arguably inadequate, we do not require further briefing in view of our determination that McKinney is not entitled to attorney's fees because its protest is not related to an excessive appraisal, but instead a protest over the decision to re-assess or "back access property."

Section 42.29 provides, "A property owner who prevails in an appeal to the court under Section 42.25 . . . may be awarded reasonable attorney's fees." TAX § 42.29(a). Section 42.25 provides a "remedy for excessive appraisal." *See id.* § 42.25.

---

[7] Additionally, Subchapter A of Chapter 23 discusses different methods of appraisal. *See, e.g.*, *id.* §§ 23.0101 (alternate appraisal methods), 23.011 (cost method of appraisal), 23.012 (income method of appraisal), 23.013 (market data comparison method of appraisal).

–8–

> If the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court.

*See id.*

We interpret the requirements of section 42.29 narrowly. *See Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 52 (Tex. 2018), *opinion corrected on reh'g* (Sept. 28, 2018). CCAD responded to McKinney's motion, arguing attorney's fees were unavailable under that section because McKinney's counterclaim was not for an "excessive appraisal," but for the treatment of the property as "qualified open-space land." CCAD relied on a decision from the Texas Supreme Court, which held where a taxpayer successfully appeals the denial of an open-space land designation, the use of the property is examined, not the value of the property, and thus the dispute is not one for excessive appraisal such that the taxpayer could recover attorney's fees under section 42.29. *See Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 78–79 (Tex. 1992).

In *Seven Investment Co.*, the supreme court examined the language of section 41.41 of the tax code, which lists the actions a property owner is entitled to protest. *See id.* The court noted section 41.41(a) detailed nine different actions including a determination of the appraised value of the owner's property (section 41.41(a)(1)) and a determination that the owner's land does not qualify for appraisal as provided by Subchapter C, D, or E of Chapter 23 (section 41.41(a)(5)). *See id.* (citing TAX § 41.41(1), (5)). The supreme court concluded that the fact that the Legislature separately identified a protest of a determination that property does not qualify for an appraisal from a protest over an excessive appraisal in section 41.41 was a clear indication that an action protesting the denial of an open-space land designation is not synonymous with an action protesting an excessive appraisal. *See id.*

Here, the Notices CCAD sent to McKinney notified McKinney that CCAD had determined a change of use and determined the Property no longer qualified for agricultural use under Subchapter D of Chapter 23.  As noted by McKinney in its brief, it is not the change in qualification that McKinney protested to the ARB, but the assessment of additional taxes in the year of change of use accomplished by supplementing the appraisal roll with market value for the non-qualifying Property.  Thus, this protest does not relate a determination of whether property qualifies for an appraisal, but neither does it relate to an excessive appraisal.  Instead, it is a protest over the decision to re-assess or "back assess" property.  As we must construe section 42.29 strictly, we cannot conclude McKinney established as a matter of law that it may be awarded attorney's fees. *See Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d at 52.

## CONCLUSION

Because the law applicable to the parties' dispute establishes CCAD had no authority to assess additional taxes on the Property during the change of use year, we reverse the trial court's order granting summary judgment in favor of CCAD and render judgment in favor of McKinney. Because the parties' dispute does not relate to an excessive appraisal, McKinney is not entitled to seek recovery of attorney's fees.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

181113F.P05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MCKINNEY MILLENNIUM, LP,
Appellant

No. 05-18-01113-CV      V.

COLLIN CENTRAL APPRAISAL
DISTRICT, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-03033-2015.
Opinion delivered by Justice Schenck.
Justices Whitehill and Rosenberg
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and judgment is **RENDERED** that:

affirms the Collin Appraisal Review Board's June 11, 2015 orders granting
McKinney Millenium, LP's protests and reversing the adjustments made by the
Collin County Appraisal District.

It is **ORDERED** that appellant MCKINNEY MILLENNIUM, LP recover its costs of this
appeal from appellee COLLIN CENTRAL APPRAISAL DISTRICT.

Judgment entered this 9th day of March, 2020.